**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 18-25304-Civ-SCOLA/TORRES

JAMES GRAHAM,

      Plaintiff,

v.

ANDREW SAUL, Acting Commissioner of
Social Security Administration,

      Defendant.

_____/

**REPORT AND RECOMMENDATION ON THE PARTIES'**
**CROSS MOTIONS FOR SUMMARY JUDGMENT**

    This matter is before the Court on the parties' cross motions for summary judgment filed by James Graham ("Plaintiff") [D.E. 25] and Andrew Saul, the Acting Commissioner of the Social Security Administration ("Defendant" or "Commissioner") [D.E. 26] on whether the Administrative Law Judge (the "ALJ") properly weighed the evidence presented in reaching an unfavorable decision.   Under the limited standard of review that governs this case, the Court finds that substantial evidence supports the ALJ's determination.   Therefore, Plaintiff's motion for summary judgment [D.E. 25] should be **DENIED**, Defendant's motion for summary judgment [D.E. 26] should be **GRANTED**, and the ALJ's decision should be **AFFIRMED**.[1]

---

[1]     On February 6, 2019, the Honorable Robert N. Scola, Jr. referred all dispositive matters to the undersigned Magistrate Judge for disposition.   [D.E. 9].

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was born on September 12, 1972 and has a ninth-grade education.[2] Plaintiff has worked as a garbage collector, garbage collector driver, and brush cleaner.   On January 8, 2016, Plaintiff filed an application for social security benefits, alleging a disability onset date of January 4, 2016 due to the claimed impairments of diabetes, herniated disc, shoulder tear, rotator cuff out of socket, pinched nerve in back, and high-blood pressure.   [T.R. 72].   The shoulder and back related injuries stemmed from Plaintiff falling down a stairway in October 2015. [T.R. 37-38].   The Commissioner denied Plaintiff's applications at the initial and reconsideration levels.   Plaintiff then requested a hearing before the ALJ that took place on January 29, 2018.

After considering the record and the testimony of a vocational expert ("VE"), the ALJ issued an unfavorable decision on May 11, 2018.   At step one of a five-step sequential process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 4, 2016.   The ALJ found at step two that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, left shoulder rotator cuff tear, degenerative joint disease of the left shoulder, meniscus tear of the left knee, diabetes, obesity, and diabetic neuropathy.   The ALJ also found Plaintiff to have the non-severe impairment of high-blood pressure.   The ALJ

---

[2]     Plaintiff testified that he has an eighth-grade education, but his disability application shows that he has a ninth-grade education, which was corroborated by his counsel at the administrative hearing.

determined that these impairments did not meet any of the listed impairments under the Social Security regulations.

Prior to moving to step four, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) except Plaintiff:

> can occasionally climb ramps and stairs but should not climb ladders, ropes or scaffolds. He can occasionally kneel, crouch, crawl and stoop. He can frequently reach in all directions with the left arm but never overhead. He can frequently handle, finger and feel. He should not work at unprotected heights and should avoid concentrated exposure to extreme heat and cold.

[Tr. 13].

The ALJ then proceeded to step four and determined that Plaintiff could not perform his past relevant work. At step five, the ALJ relied on the testimony of the VE to conclude that Plaintiff could perform at least three jobs available in the national economy – including the jobs of parking cashier, office helper, and storage facility clerk. [Tr. 21]. Following the ALJ's unfavorable decision, Plaintiff requested further review, but the Appeals Council denied that request on November 26, 2018. [Tr. 1-5]. Plaintiff then filed this action seeking judicial review of the administrative proceedings pursuant to 42 U.S.C. § 405(g). Accordingly, this action is now ripe for disposition.

## II.    STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to an inquiry into whether there is substantial evidence in the record to support an ALJ's findings and whether

the correct legal standards were applied.  *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kelley v. Apfel*, 185 F.3d 1211, 1212 (11th Cir. 1999). "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

In testing for substantial evidence, a court is not to "reweigh the evidence" or "decide the facts anew." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citing another case).  Instead, so long as an ALJ's findings are supported by substantial evidence, they are conclusive, and a court must defer to an ALJ's decision even if the evidence may preponderate against it.  *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings."); *Miles*, 84 F.3d at 1400; 42 U.S.C. § 405(g).  However, no presumption of validity attaches to the Commissioner's conclusions of law.  *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

A court also reviews an ALJ's decision to determine whether the correct legal standards were applied.  *See Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). In this respect, "the ALJ has a basic obligation to develop a full and fair record," as a

hearing before an ALJ is not an adversary proceeding.   *Id.* (citing another source).

Ultimately, it is the function of the Commissioner to resolve conflicts in the evidence and to assess the credibility of the witnesses.   *See Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).   It is also the responsibility of the Commissioner to draw inferences from the evidence, and those inferences cannot be overturned if they are supported by substantial evidence.   *See Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963).   If a decision is supported by substantial evidence, a court must affirm even if the proof preponderates against it.   Therefore, a court's responsibility is to ensure that the proper legal standards were applied.   *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

### III.      ANALYSIS

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or is expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).   The claimant bears the burden of producing evidence that proves he meets this statutory definition.   "The social security regulations establish a five-step evaluation process, which is used to determine disability for both SSI and DIB claims" and "[t]hese regulations place[] a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work."   *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Spencer v. Heckler,* 765 F.2d

5

1090, 1093 (11th Cir. 1985)).   The steps are followed in order to determine if the claimant is disabled.

An ALJ must first determine whether the claimant is presently employed.   If so, a finding of non-disability is made, and the inquiry ends.   *See* 20 C.F.R. § 404.1520(b).   In the second step, an ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments.   If an ALJ does not make such a finding, then the inquiry ends.   *See* 20 C.F.R. § 404.1520(c).   At step three, an ALJ compares the claimant's impairments with specific impairments under the Social Security regulations that require a finding of disability without further inquiry into the claimant's ability to perform other work.   *See Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985) ("Certain impairments are so severe either when considered alone or in conjunction with other impairments that, if such impairments are proved, the regulations require a finding of disability without further inquiry into the claimant's ability to work.").   If the claimant's impairment meets or equals a listed impairment, the claimant's disability is presumed, and benefits are awarded.   *See* 20 C.F.R. § 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing past relevant work.   If the claimant cannot perform past relevant work, then a prima facie case of disability is established.   An ALJ assesses a claimant's RFC at this stage, based on other relevant evidence, to determine the extent of a claimant's ability to work despite the alleged impairments.   *See* 20 C.F.R.

6

§ 416.945(a)(1).   A claimant's RFC is an administrative finding of fact concerning the claimant's maximum remaining capacity to perform work-related physical and mental activities on a regular and continuing basis despite the functional limitations and environmental restrictions imposed by his or her medically determinable impairment(s).   *Id.*

When making an RFC assessment, an ALJ is required to identify the limitations and/or restrictions imposed by the claimant's impairments and then assess his or her work-related abilities on a function-by-function basis.   Only upon the conclusion of this function-by-function analysis may an ALJ express a claimant's RFC in terms of the exertional levels of work, i.e., sedentary, light, medium, heavy, and very heavy.   This leads to step five – the final inquiry – where the burden shifts to the Commissioner to show that there is other work available in the national economy that the claimant can perform.   *See* 20 C.F.R. § 404.1520(e)-(f).

On appeal, Plaintiff challenges the ALJ's decision in three ways: (1) that the ALJ failed to assign a weight to certain medical opinions, (2) that the ALJ's assessment of Plaintiff's RFC lacked substantial evidence, and (3) that the ALJ failed to properly assess Plaintiff's allegations of symptoms and pain.   We will consider each argument in turn.

### A.   *Substantial Evidence Supports that the ALJ Considered Medical Opinions*

Plaintiff first contends that the ALJ failed to articulate the weight he accorded to the medical opinions of Dr. Edward Lazzarin and Dr. Pedro Tort-Saade.

Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis.   20 C.F.R. § 404.1527(a)(1).   Procedurally, an ALJ is "required to state with particularity the weight he [gives] the different medical opinions and the reasons therefor."  *Sharfarz v. Bowen,* 825 F.2d 278, 279 (11th Cir. 1987).   Absent such a statement, a reviewing court cannot determine whether the ultimate decision is supported by substantial evidence.  *See Hudson v. Heckler,* 755 F.2d 781, 786 (11th Cir. 1985) (citation omitted).   Absent good cause, an ALJ must give a treating physician's opinion substantial or considerable weight.   20 C.F.R. §§ 404.1527(c), 416.927(c).

If an ALJ makes clear that he considered a physician's opinion, and his findings were consistent with the opinion, then there is no harmful error.  *Colon v. Colvin*, 600 F. App'x 867, 870 (11th Cir. 2016).   In other words, "even if the ALJ erroneously failed to explicitly assign weight to and discuss every aspect of [a doctor's] opinion, this error [is] harmless because it is still clear that the ALJ's rejection of the portions of [the doctor's] opinion that are inconsistent with the ALJ's ultimate conclusion was based on substantive evidence."  *Newberry v. Comm'r, Soc. Sec. Admin.*, 572 F. App'x 671, 672 (11th Cir. 2014); *see also Laurey v. Comm' r of Soc. Sec.*, 632 F. App'x 978, 987 (11th Cir. 2015) (holding that "[a]lthough the ALJ never stated the weight given to [a doctor's] treatment notes, the ALJ discussed the content of [the] notes, showing that the ALJ considered and gave weight to this medical

evidence.").

On review of the ALJ's decision, we find no reversible error. We agree that the ALJ technically failed to state with particularity the weight he assigned the opinions of Dr. Lazzarin and Dr. Tort-Saade, but that error is not fatal to the ALJ's decision as it is still supported by substantial evidence. Although the ALJ never explicitly stated the weight given to the doctors' medical opinions, the ALJ discussed their treatment notes in detail, which were consistent with the ALJ's unfavorable decision. Therefore, the ALJ demonstrated that he considered and gave weight to the doctors' medical opinions.

The Court can also infer that the ALJ gave Plaintiff's treating physician's medical opinions substantial weight because the ALJ quoted the doctor's treatment notes when determining that the record did not support a finding of disability. Specifically, referring to Dr. Tort-Saade's notes, the ALJ stated:

> In summary, based on a review of the medical evidence, as well as the claimant's testimony at the hearing, I find the evidence contained in the record does not support the claimant's allegations of totally incapacitating symptoms. . . . I note that at [citing to Dr. Tort-Saade's treatment notes], the claimant was noted to be doing 'OK' and was at work lifting and carrying heavy objects when constructing a fence as of May 16, 2017. The note also points out that the claimant had recovered from this 2015 injury to the 'point even with his working, lifting and carrying heavy objects [sic] . . .' Although this work activity did not amount to substantial gainful activity, it demonstrates that the claimant's alleged limitations are inconsistent with the record, and with his alleged disabling limitations. Thus, in view of the medical evidence of record, during the period at issue, and other factors discussed in the decision, the record does not support a finding of disability."

Curiously, Plaintiff does not reference a single medical opinion provided by either of the doctors when arguing that the ALJ failed to assign specific weight to medical opinions.   This is likely because the medical opinions of both doctors buttress the ALJ's unfavorable decision.   Plaintiff's argument is therefore solely based on a technical error made by the ALJ.   Accordingly, to the extent the ALJ should have explicitly stated that he was assigning particular weight to the doctors' medical opinions, any technical error was harmless because the ALJ's decision was consistent with and sufficiently referenced that medical evidence.   *See Laurey*, 632 F. App'x at 987.

### B. *Substantial Evidence Supports the RFC Assessment*

Plaintiff next argues that the RFC assessment – that Plaintiff could perform light work – was not supported by substantial evidence.   In particular, Plaintiff argues his subjective testimony and certain medical evidence show that he cannot perform light work due to his inability to (1) stand and/or sit for long periods of time, (2) lift heavy objects, and (3) reach for objects.

A RFC is what a claimant can still do despite his limitations and is an assessment based on all the relevant evidence in the record.   *See* 20 C.F.R. § 404.1545(a)(1).   An ALJ often considers opinions from medical sources when determining a claimant's RFC because "the final responsibility for deciding these issues is reserved for the Commissioner."   20 C.F.R. § 416.927(e)(2).   The reason the Commissioner is tasked with this determination is because "[g]iving controlling

10

weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." S.S.R. 96-5P, 1996 WL 374183, at *2.

"'The RFC assessment must first identify the individual's functional limitations or restrictions and assess . . . her work-related abilities on a function by function basis . . . [o]nly after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy.'" *Freeman v. Barnhart*, 220 F. App'x 957, 959 (11th Cir. 2007) (quoting SSR 96–8p, 1996 WL 374184). The Social Security regulations mandate a narrative discussion of "the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." (SSR 96–8p, at *6). As such, "[t]he ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for the decision so that a reviewing court will be able to determine whether the ultimate decision is based on substantial evidence." *Freeman*, 220 F. App'x at 960 (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

In making this determination, "[w]e do not require the ALJ to 'specifically refer to every piece of evidence in his decision,' so long as the decision is sufficient to allow

us to conclude that the ALJ considered the claimant's medical condition as a whole." *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009) (citing *Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir. 2016) (stating that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision")); *see also Gully v. Astrue,* 2009 WL 1580416, at *2 (M.D. Ala. 2009) (finding that an ALJ's failure to "more specifically and explicitly set forth his findings with respect to a claimant's functional limitations and work-related abilities on a function-by-function basis is excusable where it is apparent the ALJ did consider all of the evidence") (citing *Freeman*, 220 F. App'x at 959-60).

In this case, the ALJ correctly considered relevant medical opinions and Plaintiff's own testimony regarding his past activities when making the RFC assessment.   And the ALJ sufficiently discussed Plaintiff's limitations resulting from his impairments when making the determination that Plaintiff could do light work.   Further, the ALJ made it clear that he did not give weight to (1) Plaintiff's testimony when it contradicted both the medical evidence and Plaintiff's other testimony and (2) treatment notes that were outdated after Plaintiff's injuries showed improvement.[3]   The ALJ therefore properly discounted Plaintiff's testimony that it was difficult for him to stand, bend, and walk and he had significant pain in his feet,

---

3   Plaintiff contends that the ALJ failed to explain how ambiguities in the evidence in the record were considered and resolved.   However, the ALJ clearly explained that he only considered Plaintiff's testimony regarding his symptoms that were "consistent with the objective medical evidence and other evidence."   [T.R. 13].

knees, back, shoulder, and hands every day when this was contradicted by other evidence.

Plaintiff's argument that certain older medical evidence shows he could not perform light work is unavailing because this ignores the fact that both later medical evidence, as well as Plaintiff's activities of clearing brush and constructing a fence, show Plaintiff had substantially recovered from his prior injuries.   Essentially, the record as outlined below demonstrates that Plaintiff recovered from his two falling accidents after he received treatment and time passed.[4]

Beginning with Plaintiff's doctor visits related to his impairments of diabetes and high-blood pressure – before Plaintiff's accident of falling down a stairway – Plaintiff's physical exams were essentially normal; he complained of general malaise and weakness, but he was not checking his blood sugar and not eating a diabetic diet. After his fall in October 2015, Plaintiff was diagnosed with a severe lumbar sprain, possible radiculopathy, severe left shoulder sprain, and possible rotator cuff tear. An MRI from November 2015 confirmed that Plaintiff suffered a tear in his left shoulder and a central disc herniation from the fall.   Plaintiff then underwent physical therapy and began taking medication for his pain; Dr. Lazzarin also recommended surgery on his left shoulder.

---

[4]      The record also shows that Plaintiff could have recovered from his injuries in a more substantive way if he followed all the advice of his doctors.   We do understand that Plaintiff could not always follow that advice due to financial reasons, but frequently there were no financial restrictions for Plaintiff's lack of self-care.

Less than two months later in early January 2016, and immediately before Plaintiff's alleged disability onset date, Plaintiff was employed to pick up tree branches and put them in a woodchipper.   The next month, Plaintiff complained of pain in his hands and feet; however, he failed to take his prescribed medication during the week before the exam.   By January 2017, Plaintiff had unremarkable physical exams including that his shoulder and back pain were controlled, except that Plaintiff had a Body Mass Index of 34.6 and paravertebral muscle pain in his bilateral lumbar area.

Plaintiff was "doing okay" until he had another accident on May 16, 2017. While he was lifting a heavy object in connection with constructing a fence, Plaintiff stepped into a hole and hurt his knee and re-injured his left shoulder.   After the May 2017 accident, Plaintiff reported that he never had surgery on his left shoulder as recommended by Dr. Lazzarin because his shoulder had improved to the point where he could lift heavy objects again, and an examination after the accident showed that Plaintiff had full range of motion in his left shoulder, but had some discomfort in reaching overhead.   An MRI from June 2017 showed tears and tendonitis in the left shoulder.   In August 2017, Plaintiff was not taking some of his prescribed medications, and even though Plaintiff complained of chronic back and left shoulder pain, a physical examination noted normal range of motion and that he only had left shoulder pain when reaching overhead.   On October 12, 2017, Dr. Tort-Saade performed surgery to repair Plaintiff's left shoulder.   By November 2017, Plaintiff's

14

left shoulder had mostly healed from the surgery with only limited range of motion and mild discomfort, and additional post-surgery improvement was expected.

After the May 2017 accident, Plaintiff's left knee was diagnosed with acute and chronic process of degeneration of the cartilage in multiple compartments and a probability of a complete tear of the posterior horn of the medial meniscus and irritation of the area of the cartilage.   Plaintiff was thus ordered to complete physical therapy for his knee, and Dr. Tort-Saade recommend left knee arthroscopy once he fully recovered from his left shoulder surgery.

This combination of medical evidence and Plaintiff's past activities show that, as of the ALJ hearing date, Plaintiff had limited range of motion in his left shoulder with mild discomfort that was expected to improve with time and could be treated with medication; mild lower back pain that could be treated with medication; and knee pain that could be treated with physical therapy, surgery, and medication. Plaintiff also still had the impairments of diabetes and high-blood pressure, but there is no medical evidence that these impairments prevented Plaintiff from handling light work if properly treated.

In his argument, Plaintiff lists almost every detail from the examinations that occurred immediately after his accidents to paint the picture that Plaintiff still suffered from all of these impairments as of the date of the ALJ hearing.  This, however, completely ignores other medical evidence that shows Plaintiff recovered after these initial examinations from time and treatment.   *See Lovelace v.*

15

*Bowen,* 813 F.2d 55, 59 (5th Cir. 1987) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling.)

Besides the medical evidence, Plaintiff's testimony regarding his physical activities show that he had recovered from his first accident.   First, Plaintiff was able to clear brush just a few months after his first accident.   Second, Plaintiff could lift heavy objects and build a fence almost over a year after his first accident.   This shows that all medical notes prior to the May 2017 accident are generally not relevant to the ALJ's decision, and the ALJ was correct in not giving them weight except to show that Plaintiff had recovered.   Further, during the hearing, Plaintiff claimed that he could walk for about 30 minutes at a time and sit for about 30 to 45 minutes at a time before experiencing pain.   Plaintiff argues that this shows he cannot perform light work because light work requires that he stand or sit more than fours a day.   Plaintiff is correct that light work requires either sitting or standing during half a workday, but Plaintiff does not need to stand or sit for four hours *straight* in a day; he can alternate from sitting to standing as needed, which he claims he can do.

The record thus shows that Plaintiff's impairments do not prevent him from sitting, standing, walking, reaching (except reaching overhead with his left arm), and lifting light weight.   The only potential evidence to the contrary is outdated medical evidence and Plaintiff's subjective testimony that is contradicted by the relevant evidence.   The ALJ properly assessed the RFC based on all relevant evidence in the record.   Therefore, we find that the ALJ's RFC assessment that Plaintiff could

16

perform light work as defined in 20 C.F.R. 404.1567(b) is supported by substantial evidence because it was supported by (1) the medical record and (2) Plaintiff's testimony regarding his past activities.

### C. *The ALJ Properly Discredited Plaintiff's Subjective Testimony*

The final argument made by Plaintiff is that the ALJ failed to properly evaluate Plaintiff's symptoms and allegations of pain.   For instance, Plaintiff alleges it is difficult for him to stand, bend, and walk and that he can barely get out of bed in the morning.   That he has cramping and aching in his hands, feet, and back every day and he only tries to lift items weighing less than eight pounds (i.e. a gallon of milk) due to this pain.

Social Security regulations provide that statements about pain or other symptoms will not alone establish that a claimant is disabled.  *See* 20 C.F.R. § 404.1529(a).  "In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."  *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citation omitted). An ALJ is not required to accept a claimant's subjective allegations of pain/symptoms and may properly consider the credibility of a claimant when making a determination of disability.  *See id.* at 1225-26.  If an ALJ rejects a claimant's allegations of pain,

"he must articulate explicit and adequate reasons for doing so." *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).   A "clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.* at 1562.

In reaching a determination, the ALJ may consider the following factors: (1) treatment history, (2) the type, dosage, effectiveness, and side effects of any medications taken, (3) treatment taken other than medications, (4) any other measures used for relief of pain or other symptoms, (5) any precipitating and aggravating factors, (6) medical source opinions, (7) statements by the claimant or others about pain and other symptoms, (8) information about prior work, and (9) evidence of daily activities.   *See* 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3). But the ALJ is not required to discuss every factor.   *See Dyer*, 395 at 1212 ("In sum, the ALJ considered [the claimant's] activities of daily living, the frequency of his symptoms, and the types and dosages of his medications, and concluded that [the claimant's] subjective complaints were inconsistent with his testimony and the medical record.   The ALJ thus adequately explained his reasons.").

Here, the ALJ considered Plaintiff's treatment history, medical source opinions, Plaintiff's activities, and Plaintiff's lack of (1) taking his medications consistently and (2)  following the advice of his doctors.   Based on this record, the ALJ could conclude that Plaintiff's subjective complaints were inconsistent with his testimony and the medical record.   Plaintiff does not present objective medical

evidence that he cannot lift a weight of at least 10 pounds, which would be required when doing light work, or that he is unable to stand, walk, or sit.  Additionally, Plaintiff's left knee could be treated from physical therapy, arthroscopic surgery, and medication.  Thus, the ALJ properly rejected Plaintiff's subjective allegations of pain/symptoms and articulated his reasons for doing so.  *See Foote*, 67 F.3d at 1561-62.  We therefore conclude substantial evidence supports the ALJ's determination that Plaintiff's subjective allegations of pain/symptoms were not entirely credible.

As noted above, the Court's limited standard of review does not allow for re-weighing the evidence; instead, our inquiry is limited into whether or not substantial evidence in the record as a whole can support the ALJ's findings.  *See Richardson*, 402 U.S. at 401; *Winschel*, 631 F.3d at 1178; *Kelley*, 185 F.3d at 1212.  The Court therefore finds that the ALJ's conclusions are supported by substantial evidence.

## IV.    CONCLUSION

Substantial evidence supports the ALJ's findings as noted in the unfavorable decision.  The ALJ's decision applied proper legal standards and any errors therein did not prejudice Plaintiff and were harmless.  For the foregoing reasons, Plaintiff's motion for summary judgment [D.E. 25] should be **DENIED**, Defendant's motion for summary judgment [D.E. 26] should be **GRANTED**, and the decision of the ALJ should be **AFFIRMED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have twenty-one (21) days from the filing of this Report and Recommendation within which

to file written objections, if any, with the District Judge. The Court finds good cause to extend the time period, as per Local Rule 4(b), based on the present delays involving in the national health emergency.   Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.   28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 20th day of March, 2020.

*/s/ Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge

20